Andre **BOUCHARD** et al., Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Walter E. **WASHINGTON**, Individually and as Mayor-Commissioner of the District of Columbia, et al., Defendants.

Civ. A. No. 976–72.

United States District Court, District of Columbia.

March 20, 1972.

---

10. ¶ 11.

14. ¶ 8.

15. *United States ex rel. Hyde* v. *McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970) ; *see also Church* v. *Hegstrom*, 416 F.2d 449, 451 (2d Cir. 1969).

Stephen R. Lazarus, Washington, D. C., for plaintiffs.

Louis P. Robbins, Asst. Corp. Counsel, Washington, D. C., for District of Columbia defendants.

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., for federal defendants.

## MEMORANDUM-ORDER

GASCH, District Judge.

This matter came on for consideration of plaintiffs' motion for a preliminary injunction, the District of Columbia defendants' motion for summary judgment, the Federal defendants' motion to dismiss or for summary judgment, and the plaintiffs' cross-motion for summary judgment.

Plaintiffs are members of the Model Cities Commission and residents and representatives of the 80,000 persons residing within the District of Columbia Model Cities Neighborhood (hereinafter "Model Neighborhood"). They bring this action for declaratory and injunctive relief against the District of Columbia, the Department of Housing and Urban Development (HUD), and certain officers and agents thereof. Plaintiffs seek a judgment declaring that the defendants' acts and omissions relating to the District of Columbia Comprehensive City Demonstration Program and to the Model Neighborhood violate the provisions of Title I of the Demonstrations Cities and Metropolitan Development Act of 1966 (hereinafter "Model Cities Act"), 42 U.S.C. § 3301 et seq., and the administrative regulations promulgated thereunder. Specifically, plaintiffs claim that their rights relating to the "widespread citizen participation" and "local initiative" contained in Section 3303 of the Model Cities Act have been violated by the adoption and implementation of a revised administrative structure for the Model Cities Program. According to the plaintiffs, the new structure relegates the "citizens participation" component, the Model Cities Commission, to an advisory rather than policy-making body; eliminates the "Impasse Board" provisions to resolve issues

between the Commission and the District government-controlled City Demonstration Agency (hereinafter "CDA") in favor of a procedure whereby the District government may arbitrarily dispose of such contested issues; and withdraws from the Commission the independent technical staff necessary to supply sufficient information for the evaluation and initiation of program proposals. Plaintiffs further argue that the District and Federal defendants have acted unlawfully in allowing employment within the Model Cities Program of non-residents of the Model Neighborhood. An adequate review and evaluation of plaintiffs' contentions requires a clear understanding of the purpose of the Model Cities Act and the circumstances surrounding the planning and approval of the modified administrative organization of the Model Cities Program.

In an effort to alleviate the serious problems that confront American cities, Congress enacted the Demonstration Cities and Metropolitan Development Act of 1966 and declared:

" * * * that improving the quality of urban life is the most critical domestic problem facing the United States. The persistence of widespread urban slums and blight, the concentration of persons of low income in older urban areas, and the unmet needs for additional housing and community facilities and services arising from rapid expansion of our urban population have resulted in a marked deterioration in the quality of the environment and the lives of large numbers of our people while the Nation as a whole prospers. * * *" 42 U.S.C. § 3301.

The purpose of the Act was to "provide additional financial and technical assistance to enable cities . . . to plan, develop, and carry out locally prepared and scheduled comprehensive city demonstration programs containing new and imaginative proposals to rebuild or revitalize large slum and blighted areas . . . ." 42 U.S.C. § 3301. *See also* House Report (Banking and Currency Committee) No. 1931, 89th Cong., 2d Sess. (1966), appearing at 1966 U.S. Code Cong. and Admin.News, p. 3999.

Pursuant to the requirement of the Model Cities Act that "widespread citizen participation" be provided for in a model cities program, the Honorable Walter E. Washington, Mayor-Commissioner of the District of Columbia, issued Order of the Commissioner No. 68–761 on December 13, 1968, which established the Model Cities Commission as the "citizens participation" component of the program. The Order provided that the members of the Commission would be the elected representatives of the model area residents and the community at large. The Commission was directed to coordinate its approval of plans and proposals and its "decision-making activities through the Model Cities Administrator." [1] In the event that the Model Cities Administrator disapproved of a decision of the Commission, the Order provided that the disputed matter would be referred to an "Impasse Board" composed of two persons selected by the Commission, two persons selected by the Administrator and a fifth person selected by the other four.[2]

After the issuance of Commissioner's Order No. 68–761, the First Year Action Plan was submitted to HUD on August 19, 1969, and approved on April 16, 1970. On September 15, 1971, the Second Year Action Plan was submitted to HUD and was approved on February 11, 1972. During the last few months of 1971 and the early part of 1972, it became increasingly apparent that the CDA and the Model Cities Administrator were seriously considering the need for revisions and improvements in the

1. Order of the Commissioner No. 68–761, Section 1(b), December 13, 1968; Exhibit A attached to Plaintiffs' Motion for a Preliminary Injunction.

2. *Id.*, Section 4.

existing administrative structure of the Model Cities Program in order to achieve the tangible objectives of the Model Cities Act. After various meetings with the Commission, the Commission's staff, the CDA staff, the Commission's Administrative Committee, a special subcommittee consisting of three Commissioners, and certain HUD officials, the Model Cities Administrator met with the full Commission on February 22, 1972, and presented drafts of a revised Commissioner's Order and a Memorandum of Understanding. On February 29, 1972, the District of Columbia defendants issued Commissioner's Order 72–44,[3] which modified the role of the Commission, consolidated the Commission and CDA staffs, and eliminated the Impasse Board provided for in Order 68–761. On March 21, 1972, defendant Francis X. Healy, HUD Assistant Regional Administrator for Community Development, responded to a letter of former Commissioner Herbert C. Coles and stated that in HUD's opinion the changes contained in Order 72–44 did not violate the Model Cities Act or HUD guidelines relating to citizen participation in the Model Cities Program.

On May 12, 1972, the instant suit was filed and the District of Columbia defendants indicated they were willing to meet with plaintiffs to discuss the issues which prompted this litigation. Plaintiffs met with both the District of Columbia and Federal defendants on July 19, 1972, and with the District defendants on August 9, 1972. These discussions resulted in the drafting of another Commissioner's Order to replace Order 72–44. Subsequently, on September 15, 1972, the District of Columbia defendants transmitted the draft Order to the plaintiffs and to all the Commissioners. On October 16, 1972, the draft Order was published as a proposed Order in the District of Columbia Register. The Model Cities Administrator met with the Commission on November 14, 1972, and was presented with a report of the Spe-

cial Executive Order Committee appointed by the Model Cities Commission, which recommended that the latest Order not be approved by the Commission. The Commission voted to accept the recommendation of the Executive Order Committee. On November 24, 1972, Mayor-Commissioner Washington issued Commissioner's Order 72–273, which is essentially an amended version of Order 72–44 that provides for an "Impasse Procedure" whereby the Commission, following disapproval of its decision, may appeal to the Mayor who will review and decide the matter within thirty days. Despite the discussions with the defendants and the issuance of Order 72–273, plaintiffs still contend that the defendants have failed to comply with the administrative regulations and the provisions of the Model Cities Act relating to "widespread citizen participation" and "local initiative." For the reasons stated herein, the Court concludes that plaintiffs' contentions are without merit and that the District of Columbia and Federal defendants are entitled to summary judgment.

Section 3303 of the Demonstration Cities and Metropolitan Development Act of 1966, 42 U.S.C. § 3301 et seq., establishes eligibility requirements for federal grants and technical assistance and authorizes the Secretary of HUD to also require that the City Demonstration Programs satisfy any additional criteria as he may deem necessary to accomplish the purposes of the Act. Section 3303 provides in part:

(a) A comprehensive city demonstration program is eligible for assistance under sections 3305 and 3307 of this title only if—

\* \* \* \* \* \*

(2) the program is of sufficient magnitude to make a substantial impact on the physical and social problems and to remove or arrest blight and decay in entire sections or neighborhoods; to contribute to the sound development of the entire city; to

---

3. *See* Exhibit I attached to Plaintiffs' Motion for a Preliminary Injunction.

make marked progress in reducing social and educational disadvantages, ill health, underemployment, and enforced idleness; and to provide educational, health, and social services necessary to serve the poor and disadvantaged in the area, *widespread citizen participation in the program,* maximum opportunities for employing residents of the area in all phases of the program, and enlarged opportunities for work and training.

\* \* \* \* \* \*

(b) In implementing this subchapter the Secretary shall—

(1) emphasize *local initiative in the planning, development, and implementation of comprehensive city* demonstration programs; . . . . (emphasis added).

In arguing that the defendants have violated certain provisions in Section 3303, the plaintiffs have primarily focused their attention on the terms "local initiative" and "widespread citizen participation." The plaintiffs have apparently misconstrued the term "local initiative" to mean only initiative on the part of the citizens participation component of the program. A closer reading of the statute [4] and the legislative history [5] reveals that the phrase "local initiative" was simply intended to emphasize the dichotomy between federal authority and local responsibility. In using the term "local initiative" Congress contemplated the initiative of local government, utilizing citizen participation as generally outlined in the statute and as given further explication under subsequent HUD issuances. Clearly, the District of Columbia defendants have complied with this provision of the statute by initiating the planning, development and implementation of local pro-

---

4. Section 3303(b)(2) directs the Secretary of HUD, in conjunction with other Federal agencies, to coordinate Federal assistance and promptly respond to local initiative. The reference to Federal and local reflects the statute's overall philosophy of providing Federal funds for local problems which should be solved by the local representatives of each city.

5. "Title I of the bill as amended by the committee would establish a new city demonstration program of Federal grants and technical assistance to help provide the incentive and the financial means for a city to plan and carry out a program for rebuilding and restoring entire sections or neighborhoods of slum and blight and to improve the general welfare of the people in such areas."

"The demonstration city approach places maximum dependence upon the locality and its officials to plan and carry out the program. The Federal Government will help with technical and financial assistance, but it will be limited to those cities presenting imaginative and effective ways of dealing with the physical and social problems of slum and blighted areas."
House Report (Banking and Currency Committee) No. 1931, 89th Cong., 2d Sess. (1966), appearing at 1966 U.S.Code Cong. and Admin.News at p. 3999.
"A 'comprehensive city demonstration program' is a locally prepared and sched-

uled program for rebuilding or restoring entire sections and neighborhoods of slum and blighted areas by the concentrated and coordinated use of all available Federal aids together with local, private and governmental resources. It will include citywide aids and resources necessary to improve the general welfare of the people living or working in these areas. . . ."
*Id.,* at pp. 4003–04.
"The committee wishes to stress that the demonstration program is based on local initiative, and local responses to local problems. The bill requires, and the committee intends, that a city's comprehensive demonstration program be planned, developed, and carried out by local people. The character and content of the program must be based on local judgment as to the city's needs."
*Id.,* at p. 4011.

The legislative history quoted above supports the conclusion that the term "local initiative" merely emphasizes the distinction between Federal and local responsibilities. The Committee Report reflects the sound determination that although the Federal Government must provide financial assistance to the cities, the divergent problems of each particular locality must be diagnosed, treated and resolved by the locality and not by Federal officials who may be unfamiliar with the specific needs of each urban center.

grams with the assistance of the citizens participation component, the Model Cities Commission.

██ The term "widespread citizen participation," however, is not susceptible to such a simple interpretation since the term is undefined in the statute and unexplained in the legislative history. Plaintiffs have relied heavily on CDA Letter No. 3,[6] issued by HUD in December, 1968, which interprets the citizen participation provision to require:

(1) the constructive involvement of citizens in the model neighborhood area and the city as a whole in planning and carrying out the program, and (2) the means of introducing the views of area residents in policy making should be developed and opportunities should be afforded area residents to participate actively in planning and carrying out the demonstration.

CDA Letter No. 3 also states that the citizen group must have "clear and direct access to the decision making process of the CDA so that neighborhood views can influence policy, planning and program decision." CDA Letter 10B,[7] issued in March, 1970, further clarified the citizen participation requirement as "the continuing process of citizen interactions with local government in the development of policies, plans, and programs and in the execution of these programs." The Letter emphasized that the "ultimate responsibility and authority for final decision lies with the officials of the local government." It also delineated the criteria for meaningful citizen participation as:

1. A representative structure.

2. Timely receipt of relevant information.

3. An ongoing communication between citizens and local government and other relevant agencies.

4. The availability of adequate resources by which citizens can receive assistance in understanding policies, plans, and programs, and in communicating to local government and program agencies the needs and desires of the citizens. This shall be provided through the staff of local government, the staff of program agencies, financial resources for independent technical assistance, or a combination thereof. The City, in good faith deliberation with the citizen participation component, is responsible for assuring that this standard is met.

Based upon the explanation of "widespread citizen participation" contained in the HUD issuances, plaintiffs urge that Commissioner Orders 72–44 and 72–273 be declared invalid due to the procedural and substantive deficiencies in the promulgation and implementation of those Orders. Since all Commissioner Orders issued prior to Order 72–273 have been rescinded, any allegations or claims concerning Order 72–44 have been rendered moot. Accordingly, the principal question pending before the Court is the validity of Order 72–273. It should be remembered that this Court granted a 90-day stay of the proceedings in this litigation in order to allow the plaintiffs and defendants an opportunity to meet and discuss possible revisions in the administrative structure of the Model Cities Program. The record reveals that the defendants did, in fact, utilize this period of time to conduct negotiations and exchange information with the Model Cities Commission concerning the proposed draft of Order 72–273. This ongoing dialogue with the citizens participation component complied with the Model Cities Act and constituted "good faith deliberation" within the meaning of CDA Letter 10B. Therefore, this Court finds that there existed

---

6. Technical Assistance Bulletin No. 3, Subject: Citizen Participation in Model Cities, December, 1968. Exhibit M attached to Plaintiffs' Motion for Summary Judgment.

7. CDA Letter No. 10B; Joint HUD–OEO Citizen Participation Policy For Model Cities Programs, March, 1970; *see* Exhibits attached to Federal Defendants' Motion for Summary Judgment.

no procedural defects in the formulation and adoption of Order 72–273.

■ In addition to their allegations of procedural improprieties, plaintiffs also assert that the substantive changes reflected in Order 72–273 emasculate the Model Cities Commission and violate the requirement of "widespread citizen participation." Plaintiffs are apparently contending that the Commission is entitled to either absolute control of the Model Cities Program or at least an equality of power to be shared with the CDA. However, a careful review of the Model Cities Act, the legislative history, the HUD issuances, and applicable case authority reveals no substantial support for plaintiffs' proposition. The question of what is meant by the term "widespread citizen participation" has been previously litigated in North City Area-Wide, Inc. v. Romney, 428 F.2d 754 (3rd Cir. 1970), on remand, 329 F.Supp. 1124 (E.D.Pa.1971), rev'd, 456 F.2d 811 (3rd Cir. 1972), cert. denied, 406 U.S. 963, 92 S.Ct. 2063, 32 L.Ed.2d 351, which concerned citizen participation in the Model Cities Program in Philadelphia. In that case it was held that fundamental changes in model cities plans regarding the drastic reduction of involvement by the designated citizens group could not be made in the absence of citizens participation. The Court emphasized:

> "[T]he issue is not citizen veto or even approval, but citizen participation, negotiation, and consultation in the major decisions which are made for a particular Model Cities Program."

456 F.2d at 818.

Order 72–273 was adopted pursuant to "citizen participation, negotiation, and consultation" and its substantive provisions require the same procedures for all "major decisions which are made for a particular Model Cities Program."

The plaintiffs' allegations concerning substantive defects in Order 72–273 raise questions in two principal areas: the role and function of the Model Cities Commission and the provision of assistance to the Commission. It is not disputed that Order 72–273 changes the precise role of the citizen participation component from the role previously played under Order 68–761. However, the basic philosophy that the Commission be directly involved in the decision-making process has been retained in Order 72–273.[8] This Order provides, *inter alia,* that the Commission will have the following functions:

(2) The Commission shall advise and make recommendations to the Mayor through the Model Cities Administrator concerning the development, review and coordination of plans and proposals using the Model Cities funds;

(3) The Commission shall have the authority to review D. C. and Federally funded programs proposed for the Model Cities Area or impacting that Area and shall make recommendations on such programs to the Mayor through the Model Cities Director.

. . .

The Order further states that when the Model Cities Administrator disapproves of a Commission decision, the Commission may appeal to the Mayor who has final responsibility for reviewing and deciding the contested issues. In addition, the Model Cities Director has been assigned the task of assisting the Commission in the performance of its duties. This assignment includes "providing staff support as needed to support the Commission and its citizens participation activities" and "providing reports and other information to the Commission on the activities and progress of the Model Cities Program on a regular

8. Executive Order 72–273 is prefaced by the statement that "it is the intention of the District Government to provide the citizens of the Model Area direct access to the decision-making process by involving them in the development of a Model Cities plan for the area and the review of program progress in order to improve the quality of our urban life."

and timely basis, and as requested." Based upon the functions and duties of the Commission outlined above and the guidelines established in the HUD issuances, this Court concludes that the substantive requirement of "widespread citizen participation" has been satisfied.

■■ It cannot be seriously contended that the Model Cities Act and the HUD issuances are intended to construct a rigid administrative structure whereby the role of the citizen participation group may not be subsequently modified due to a reduction in financial resources, excessive delays in program implementation, confusion in areas of responsibility, or other valid reasons. So long as the requirement of good faith deliberation is met, the local government has been entrusted with the power to adjust the role and operation of the citizens participation unit. Indeed, CDA Letter 10B provides that it is the responsibility of the city to "define clearly and set forth the responsibilities and authority of the citizen participation component in these areas." An examination of Order 72–273 reveals that the city has met this responsibility and satisfied the HUD criteria for establishing a representative structure with the exchange of information in a continuing dialogue between citizens and local government. The Order is reasonably aimed at achieving the goal specified in CDA Letter 10B of enabling

. . . citizens to examine and comment on the interrelationships of programs affecting the neighborhood, to identify where lack of coordination creates gaps in delivery, inconsistent approaches, or counter effects between different program activities.

CDA Letter 10B, Section B(2).

Accordingly, it must be concluded that the revised role of the Model Cities

Commission, as contained in Order 72–273, complies with the statutory requisite of "widespread citizen participation."

■ In addition, the consolidation of the Commission and CDA staffs under Order 72–273 reflects a reasonable administrative determination that the Model Cities Program would operate more economically and efficiently with a single staff. The record discloses that the previous dual staff arrangement resulted in duplication of effort, misunderstandings concerning the duties of the respective staffs, and unnecessary delays in the execution of certain activities.[9] CDA Letter 10B does not demand an independent staff for the citizens participation group, but rather requires adequate resources whereby citizens can receive assistance in understanding policies and programs and in communicating to local government the needs and desires of community residents. This assistance is to be supplied through the "staff of the local government, the staff of program agencies, financial resources for independent technical assistance, or a combination thereof." [10] The Court finds that the staff merger contained in Order 72–273 does not violate the prerequisites of CDA Letter 10B or inhibit the exercise of "widespread citizen participation."

■ Finally, plaintiffs have alleged that nonresidents of the Model Cities area may not be employed by the CDA unless a written waiver has been executed by the Model Cities Resident Committee. The only authority for this proposition cited by plaintiffs is a provision in a proposed Resident Employment Training Plan regarding project contracts.[11] It should be noted that the plan has not been approved by HUD and is the subject of negotiations between

---

9. *See* Determination by the Area Office Director, Department of Housing and Urban Development (HUD), Concerning the Validity of Commissioner's Order 72–273, attached to Federal Defendants' Motion for Summary Judgment. *See also* Exhibit H attached to Plaintiffs' Motion for a Preliminary Injunction.

10. CDA Letter 10B, Section D(4).

11. *See* Washington, D.C. Model Cities Program, Resident Employment and Training Plan, submitted to Washington Area Director, Housing and Urban Development, June, 1972, at 50–51.

**232**

HUD and District of Columbia representatives. Moreover, the provision relied upon relates solely to the filling of vacant positions in project contracts and not to the CDA staff. Therefore, this contention of plaintiffs is without any substantial legal basis that would warrant judicial relief.

In sum, this Court concludes that the actions of the defendants complained of herein and the formulation, adoption, and implementation of Commissioner's Order 72–273 complied with the procedural and substantive requirements of the Model Cities Act and the applicable HUD issuances promulgated thereunder. Any contentions of plaintiffs not specifically considered herein are deemed to be without merit.

Wherefore, it is by the Court this 20th day of March, 1973,

Ordered that plaintiffs' Motion for a Preliminary Injunction and Cross-motion for Summary Judgment be and the same are hereby denied; and it is further

Ordered that the District of Columbia defendants' Motion for Summary Judgment be and the same is hereby granted; and it is further

Ordered that the Federal defendants' Motion for Summary Judgment be and the same is hereby granted.